MARION S. TOMS *v.* GUY A. SETTIPANE ET AL.

SUPERIOR COURT        MIDDLESEX COUNTY        FILE No. 21789

Memorandum filed November 1, 1973

*Day, Berry & Howard,* of Hartford, for the plaintiff.

*O'Connell & Budney,* of Old Saybrook, for all defendants.

DAVID M. SHEA, J.  The plaintiff owns land in Old Saybrook bounded on the east by Plum Bank Road and on the west by Long Island Sound. The defendant Mary S. Settipane owns the property on the south. Three properties form the northern boundary of the plaintiff's land, one of which is owned by the defendants Guy A. Settipane and Margaret K. Settipane. Houses on the parties' properties are usually occupied during the summer months only.

The plaintiff's father, Seth B. Toms, originally owned the land of all the parties as well as a parcel which is now owned by Anna Ryan and forms the westerly portion of the northern boundary of the plaintiff's land. On September 1, 1927, Seth Toms sold the beach-front portion of the land now owned by Mary Settipane to Ruth Hungerford, and on September 15, 1927, he sold the rear or easterly portion to Minnie Vaughan, "together with a right of way over the cement walk to the beach and the use of the beach." The cement walk referred to extends northerly across the middle of the plaintiff's land to her northern boundary on the land of Guy and Margaret Settipane. The walk then turns approximately at a right angle and runs generally along the plaintiff's northern boundary in a westerly direction to the beach. Minnie Vaughan and her husband on November 30, 1946, acquired three small pieces of land from Seth Toms, including a strip of land between their property and the Hungerford land. On October 29, 1952, their purchase of the Hungerford piece culminated in their ownership of land extending from Plum Bank Road on the east to Long Island Sound on the west. On April 24, 1957,

they sold this entire piece to Mary S. Settipane and her husband, now deceased. On April 4, 1946, Seth Toms sold the property known as the easterly portion of lot 1 and now owned by Guy and Margaret Settipane to Henry A. Lyman and Emily E. Lyman, "together with a right of way over a footpath to the beach on Long Island Sound, along other land of the grantor lying immediately southerly of said Lot 1." The Lymans sold this piece to Guy and Margaret Settipane on June 20, 1968. The westerly portion of lot 1 had been sold to William F. Ryan, deceased husband of Anna Ryan, on February 17, 1945.

The defendants dispute the plaintiff's title to the 60.5 feet of beach-front property which is the subject of this litigation, but the evidence submitted in proof of her title is overwhelming and no contrary evidence has been presented. There was testimony tracing the title back to 1858 through various deeds and certificates of distribution. There was ample evidence that Seth Toms or his wife or daughter remained in continuous possession of the beach from 1926 until the present time, a circumstance which distinguishes this case from *Loewenberg* v. *Wallace,* 147 Conn. 689, relied on by the defendants.

In the deed by which Seth Toms conveyed the property to his daughter, the plaintiff, the beach-front parcel was omitted from the conveyance for no apparent reason. Title, therefore, passed to his wife and daughter on his death, as he left no will. When his wife died, her interest passed under her will to her daughter, the plaintiff, who then became the sole owner of the property. The fact that the estates of her father and mother have not been fully settled, so that no certificate of distribution or descent has yet been recorded, may affect the marketability of the plaintiff's title but would not delay

the passage of title or the right of possession which is incident thereto. *Stevens* v. *Smoker,* 84 Conn. 569, 574.

The plaintiff claims that after Minnie Vaughan and her husband acquired the contiguous parcel of beach-front land from Ruth Hungerford, they and their successors in title, the defendant Mary Settipane and her husband, effectually abandoned the use of the beach in front of the plaintiff's property. The deed of Seth Toms to Minnie Vaughan of the easterly portion of the property, which had no other access to the beach, provided for a "right of way over the cement walk to the beach and the use of the beach." It is not claimed that the portion of the cement walk crossing the plaintiff's land from north to south has been abandoned, because this walk has been frequently used by Mary S. Settipane as a passageway to the property of her son, Guy Settipane, and his wife. In fact, the fences recently erected by the plaintiff have openings which provide for the continued use of this walk by Mary Settipane. It is claimed, however, that this defendant and her predecessors in title have abandoned the use of the walk running along the northerly boundary of the plaintiff's property and also the use of the beach involved in this litigation.

"Mere nonuser of an easement created by deed, however long continued, does not create an abandonment." *Schroeder* v. *Taylor,* 104 Conn. 596, 604. The nonuser must be accompanied by circumstances clearly indicating an intention to abandon the easement. 3 Tiffany, Real Property (3d Ed.) § 825. It is no more necessary that a person having an easement appurtenant to land make use of the easement in order to preserve his right thereto than it is required that he actually occupy or cultivate the land in order to maintain his title. *American Brass Co.* v. *Serra,* 104 Conn. 139, 145.

The defendants claim that the Vaughans, after they acquired the beach-front parcel from Ruth Hungerford, erected on the beach two metal posts between which a chain was stretched in order to create a fence between their beach and that of the plaintiff. The plaintiff testified that they ceased to use her beach and the right of way over the cement walk referred to in their deed. When, however, they conveyed the property to Mary Settipane and her husband, they expressly included the right of way over the cement walk and the right to use the beach as an easement appurtenant to the second piece of land described in their warranty deed. Under all the circumstances, the court finds no intention on the part of the Vaughans to abandon the easement.

The plaintiff admitted that Mary Settipane and her husband had used the cement walk to the beach and had walked across the plaintiff's beach after they purchased the property from the Vaughans. There is other evidence of such use also, although it may have been infrequent. It is also probable, as the testimony indicates, that the children of Mary Settipane and her husband used the plaintiff's beach and the right of way in playing with the Ryan children and others over the entire beach area. There is no substantial evidence to prove that Mary Settipane or her husband ever had any intention of abandoning the right of way and beach rights appurtenant to the original Vaughan property. They may well have contemplated some future division of the two parcels they had acquired or the building of another cottage on the beach-front parcel. At any rate, it is improbable that they would have intentionally relinquished a right so essential to the value of the rear parcel of their land. It is especially remote that any such intention to abandon was formed after their son, Guy, and his wife purchased their property from the Lymans, because of the problem concerning their beach rights.

The plaintiff in her brief concedes that there has been no abandonment of the north to south right of way over the cement walk, because it was used almost daily during the summer by Mary Settipane or her husband in visiting their son and his family after the son acquired his property. The court can perceive no distinction between this portion of the easement and the remainder with respect to the question of intention to abandon any part thereof.

It is concluded that the plaintiff has failed to sustain her burden of proof on her claim of abandonment against the defendant Mary Settipane.

The deed from Seth Toms conveyed the easterly portion of lot 1 to the Lymans "together with a right of way over a footpath to the beach on Long Island Sound, along other land of the grantor lying immediately southerly of said Lot 1." It seems undisputed that the. "footpath" referred to is the portion of the "cement walk," mentioned in the earlier deed to the Vaughans, extending from the easterly portion of lot 1 along the plaintiff's northerly boundary to the beach. The cement walk is about eighteen inches wide. The Lymans, at the time they sold this property to Guy Settipane and his wife, signed an affidavit stating that they had used the beach in front of the property of the plaintiff. Four years later they signed a second affidavit, at the request of the plaintiff, stating that the first affidavit was "in error in that we only used the beach approximately in front of the footpath . . . and that we never used the balance of the beach . . . openly, continuously and under a claim of right . . . and that each time we entered upon the said balance of the beach . . . we did so only with the permission of said Marion S. Toms and Seth B. Toms." In their depositions, the Lymans repudiated the first affidavit again and testified that they had

used only a portion of the beach in front of the stairs descending to the beach from the footpath, estimated to be about eight feet wide.

The plaintiff relies on *Raffel* v. *Brodman*, 8 Conn. Sup. 247, which held that parties having a right of way over a private pathway ten feet wide which "extends to the Beach" had only a right to get to the waters of Long Island Sound and "to use the sandy beach within the limits of the ten foot strip." The application of this precedent would restrict Guy and Margaret Settipane and their family to the use of an eighteen-inch strip of beach extending from the footpath to the water. In recognition of the absurdity of this result, the plaintiff would allow the use of a strip of beach eight feet wide, in accordance with Lyman's testimony that this was the width of the portion of the beach used by his family.

In *Anderson* v. *DeVries*, 326 Mass. 127, 134, where a similar problem arose involving a larger number of property owners seeking to use a beach, the Supreme Judicial Court of Massachusetts stated: "The way to the beach carried with it the right to use the beach for the purposes for which the way was obviously intended. We do not agree with the respondents' contention that the use of the beach should be confined to an area not greater than the width of the right of way. . . . A space on the beach no wider than the width of the way [twelve feet] would hardly furnish a place adequate for the use and enjoyment of a large number of lot owners and their families and guests." An eighteen-inch strip would hardly be more adequate, even though only one family is involved here.

"It is generally held that where a street or other way is called for as a boundary in a conveyance of land, and the grantor owns the fee in the land represented as the way or street, he is estopped, as

against the grantee, to deny that the street or other way exists, and an easement in such way passes to the grantee by implication of law." 25 Am. Jur. 2d 437, Easements and Licenses, § 25. This principle has been applied to create an easement by implication in a way or street referred to as a boundary, whether or not it was actually existent at the time of the conveyance. *Buckley* v. *Maxson,* 120 Conn. 511, 518; *Billings* v. *McKenzie,* 87 Conn. 617, 621. Similarly, when the Lymans were given a "right of way over a footpath to the beach on Long Island Sound," their grantor could hardly bar them from coming upon the beach by claiming that the beach was referred to merely as a boundary at one end of the footpath. Obviously the grantees were expected to go upon the beach and to enjoy themselves once they got there.

It is preposterous, therefore, to construe the deed to the Lymans as creating an easement upon the beach limited to the width of the footpath, eighteen inches. Lyman's testimony that he restricted his use of the beach to an area eight feet in width is highly suspect under all the circumstances, especially in view of the misrepresentations made in the first affidavit which must have proved some inducement for the purchase. Even the second affidavit makes no mention of an eight-feet-wide portion of the beach but limits the Lymans to use of the beach "approximately in front of the footpath," a statement implying that only a strip eighteen inches wide was used.

When Seth Toms created this easement for access to the beach by the Lymans at the time they purchased the rear property from him, the Vaughans already had the right to use the entire beach and to use the same footpath. The Vaughans must have actually exercised these rights at that time because they did not acquire the Hungerford piece, making

an additional beach area available to them, until six years later. At the time of the sale to the Lymans, Seth Toms realized that he did not have exclusive use of his beach. It is improbable that Seth Toms intended to give the Lymans any less in terms of beach rights than he had given to the Vaughans. If he intended otherwise, his deed should have said so.

The court concludes that Guy and Margaret Settipane have the right to the use of the entire area of the plaintiff's beach, in common with the plaintiff and Mary S. Settipane.

In the first count of the counterclaim the defendants allege that the plaintiff "has wrongfully caused clouds to be placed upon the right, title, claim and interest of the defendants in and to the beach in front of her sea wall." Apparently the claim asserted is based on the action of the plaintiff in filing the second affidavit of the Lymans and also a notice under General Statutes § 47-38 for the purpose of preventing the defendants from acquiring any prescriptive rights over her property. The plaintiff was exercising her legal right to file these documents in order to protect her interests. No inference of malice can be drawn from her conduct such as would be necessary to establish a cause of action for slander of title at common law or under General Statutes § 47-33j. *Harvey Realty Co.* v. *Wallingford,* 111 Conn. 352, 361.

The claim that the plaintiff has interfered with the defendant's peaceful enjoyment of their easement rights and has committed various trespasses and nuisances, as alleged in the first count of the counterclaim, was the occasion for a good deal of recrimination and testimonial trivia, including the fact that the plaintiff has left an old rowboat on the beach and has allowed her dog to defecate on the sand.

It is undisputed that the plaintiff did order Guy Settipane to use only the portion of the beach near the footpath, but he never acceded to her demand and no actual interference with his enjoyment of the beach can be found.

The fence which the plaintiff has erected around her property, however, does substantially interfere with the use of the cement walk for access to the beach. It is a chain-link fence five feet high and it is placed only six inches from the southerly edge of the cement walk. Where the fence terminates at its westerly end, the plaintiff has reconstructed her seawall so that it extends twenty feet easterly from the westerly face of the seawall, and this portion of the wall is three feet nine inches high and is located just three inches from the southerly edge of the cement walk. The fence and the seawall unreasonably restrict the defendants in using the cement walk to the beach, because they cannot conveniently carry their boats, chairs and other beach paraphernalia along the pathway without trespassing on the property of the adjoining owner Anna Ryan. The gateway which is in the fence along the southern boundary of the plaintiff's property and provides access to the north to south cement walk for Mary Settipane measures two feet, while the opening to the property of Guy Settipane and his wife is three feet eleven inches. The former opening is too narrow to allow a small rowboat to be carried through conveniently.

The court concludes that injunctive relief should be granted requiring the fence to be relocated at least three feet from the southerly edge of the cement walk to the beach and the gateway from the property of Mary Settipane to be widened to at least four feet. The twenty-foot addition to the seawall must also be moved back the same distance

from the walk or lowered to a height no greater than one foot above the level of the walk which it borders.

No damages are awarded for these infringements on the rights of the defendants because they have actually been able to use the walk for all their activities, including transporting their boats, by trespassing upon the Ryan property.

The claim of adverse possession of the beach by the defendants, in the second count of the counterclaim, has not been proved. Until this controversy arose, neither the defendants nor their predecessors ever asserted any claim to the beach or used it to the exclusion of the plaintiff.

The court is not aware of any interference with the rights of Mary Settipane, as claimed in the third count of the counterclaim, except with respect to the erection of the fence along a portion of the cement walk and the narrowness of the gateway from her property. No actual damages can be found. At the trial some evidence was produced to indicate that the south side of the plaintiff's seawall may encroach on this defendant's property, but it appears that any such encroachment has been in existence for a period well beyond that required by the statute for a prescriptive right. See General Statutes § 47-37. In any event, this claim is not very clearly set forth in the pleadings and is outside the scope of the issues in this case.

The claim of a prescriptive right to use the beach in behalf of Mary Settipane, to the exclusion of the plaintiff, is also unsupported by any substantial evidence.

The court has found that the plaintiff has proved her title to the beach as claimed in the first count of the complaint, but also has found, contrary to the allegations of this count, that the actions of the

defendants on the beach were within their easement privileges and that they have committed no trespasses or nuisances against the plaintiff.

The claim, in the second count of the complaint, that Mary Settipane lost her easement to use the cement walk and the beach by adverse possession of the plaintiff has not been proved. The walk has been undisturbed, and when the plaintiff erected her fence she recognized her obligation to leave a fence opening for the use of this defendant.

It is ordered that judgment enter for the plaintiff quieting title to the beach against the claims of the defendants thereto, subject, of course, to their easement rights to use the entire beach in common with the plaintiff and their rights to use the cement walk as previously discussed.

It is ordered that judgment enter for the defendants requiring the plaintiff to relocate her fence and seawall as previously discussed.

Counsel are instructed to prepare an appropriate judgment file.