MARY A. HAYES vs. THE TORRINGTON WATER COMPANY.

First Judicial District, Hartford, October Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

While a private corporation which furnishes water to the residents of a municipality for domestic use, under a charter which gives it power to protect its supply from pollution, is not a guarantor of the purity of the water or of its freedom from infection, such corporation is bound to use reasonable care to ascertain whether its water-supply is or may be infected with a communicable disease from causes which are known to exist, or which could have been known or foreseen by the exercise of such care; and if the probability of such infection would have been disclosed thereby, the water company is liable for failing to adopt whatever precautionary measures are, under the circumstances of the case, reasonably proper and necessary to protect its patrons from the risk of infection.

The question whether a water company has fulfilled its legal duty is, except in extreme instances, one of fact to be determined with reference to all the circumstances of that particular case.

The evidence in the present case reviewed and held to be sufficient to entitle the plaintiff to go to the jury upon the question whether the defendant water company was negligent in not purifying or examining its water-supply before distributing it to its customers.

In the present case the defendant water company claimed that inasmuch as there was no evidence of any case of typhoid fever among the permanent residents on its watershed, the infection which caused the epidemic and the plaintiff's illness must have come from a casual visitor; and that the law did not require it to police its entire watershed so as to exclude the possibility of infection by an unexpected trespasser. Held that while it was true, at least on the record in this case, that the law did not demand the exercise of such

extreme care upon the part of the defendant, its contention in this respect did not meet the whole case presented by the plaintiff, since the exercise of reasonable care might have required measures which would have eliminated the infection caused by a casual visitor to the same extent as if caused by a permanent resident.

Argued October 6th—decided December 2d, 1914.

ACTION to recover damages for furnishing the plaintiff with water infected or contaminated with typhoid-fever germs, and thereby causing her to suffer with that disease, in alleged violation of the defendant's contract obligations and of its legal duty, brought to the Superior Court in Litchfield County, where the plaintiff was non-suited in a trial to the jury before *Case, J.*, from which judgment she appealed. *Error and new trial ordered.*

*Caleb A. Morse* and *Thomas J. Wall*, for the appellant (plaintiff).

*William F. Henney* and *Donald T. Warner*, with whom was *Gideon H. Welch*, for the appellee (defendant).

BEACH, J. The complaint alleges that the defendant supplies the town of Torrington with water for domestic purposes, under a charter which gives it power to protect its water-supply from pollution, and that the plaintiff, who lived in a house supplied with water through defendant's pipes, contracted typhoid fever from drinking the same. The negligence alleged is in not taking steps to protect the water-supply from pollution, and in failing to adopt any measures for purifying the water before turning it into the pipes for distribution, and in not ascertaining the unwholesome condition of the water, and in not notifying the plaintiff that it was unwholesome.

There was sufficient evidence that an epidemic of typhoid broke out in the town of Torrington in the fall

of 1911; that the plaintiff contracted typhoid fever during its continuance; that the defendant obtained its water from two different watersheds, described as the Crystal Lake system and the Hart Brook system, respectively; that both of these sources were drawn upon during and before the epidemic; that the district supplied from the Crystal Lake system could be and was identified with reasonable certainty; that about ninety-seven per cent of the cases of typhoid during the epidemic either lived in the district supplied from the Crystal Lake system or furnished a definite history of having used Crystal Lake water; that typhoid fever can only be communicated by taking the germs into the system, usually in food or drink; that the Crystal Lake water was the only source of possible infection which was used in common by practically all those infected; and that laboratory examinations of the Crystal Lake water, made while the epidemic was in progress, disclosed a persistent appearance of colon bacilli, indicating the possibility that the water was infected with typhoid germs also.

From these facts we cannot say that the jury might not reasonably have inferred that the plaintiff contracted typhoid fever from drinking Crystal Lake water.

Upon the issue of negligence, there was evidence that the Crystal Lake watershed was traversed by several highways; that there were a number of farm houses on it, some of which were located within a few hundred feet of the reservoir or its tributaries; that the character of the run-off from the watershed was such as to make it probable that infected matter deposited near the reservoir or its tributaries would pollute the water-supply; that the presence of a permanent farming population, and of such transient visitors as might be expected in such a neighborhood, carried with it a continuing possibility that typhoid infection would be

deposited somewhere on the watershed; that there were at least three recognized and reasonably effective methods of preventing such infection from entering the distributing pipes: sedimentation, filtration, and disinfection; that the defendant's Crystal Lake reservoir was too small for effective sedimentation, and that the defendant had taken no other steps to purify the water. There was also evidence from which it might be inferred that, except for twelve monthly examinations made in 1909 or 1910, the defendant made no examinations of the Crystal Lake water to ascertain its continued fitness for domestic use, and that defendant did not notify the plaintiff to take any precautions in using the water.

We think this evidence was sufficient to entitle the plaintiff to go to the jury upon the question whether the defendant was negligent in not purifying or examining the Crystal Lake water before distributing it.

The duty which a water company owes to the public and to its customers is that of exercising reasonable care and diligence in providing an adequate supply of wholesome water at all times. 3 Dillon on Municipal Corporations (5th Ed.) § 1316; *Green* v. *Ashland Water Co.*, 101 Wis. 258, 77 N. W. 722, 43 L. R. A. 117; *Danaher* v. *Brooklyn*, 119 N. Y. 241, 250, 23 N. E. 745; *New Haven Water Co.* v. *Russell*, 86 Conn. 361, 369, 85 Atl. 636.

Such a corporation is not a guarantor of the purity of its water or of its freedom from infection, but it is bound to use reasonable care in ascertaining whether there is a reasonable probability that its water-supply may be infected with a communicable disease from causes which are known to exist, or which could have been known or foreseen by the exercise of such care; and if the exercise of such care would have disclosed a reasonable probability of such infection, then it becomes the duty of a water company to adopt whatever approved precautionary measures are, under the circumstances of the

case, reasonably proper and necessary to protect the community which it serves from the risk of infection.

Whether or not a water company has fulfilled the duty which the law casts upon it is, except in extreme cases, an issue of fact to be determined with reference to the circumstances of each case as it may arise. In this case the jury had been informed by evidence as to the extent and character of the watershed, the liability to infection from permanent and transient sources, the character of the existing reservoir, and the size of the community served by the defendant. These were some of the factors proper to be taken into account in determining whether reasonable care required the plaintiff to take steps to purify or examine the Crystal Lake water before distributing it, and we think the evidence as to these matters was such as to entitle the plaintiff to go to the jury.

The defendant relies very strongly on the proof that there is no history of any case of typhoid among the permanent residents on the watershed, and on the admission of plaintiff's medical witnesses that the particular infection which caused this epidemic must therefore have been deposited on the watershed by a casual visitor. The defendant argues from this admitted state of fact, that the only act or omission on its part which can justly be said to have contributed to the plaintiff's illness is the failure to police the entire watershed so as to exclude the possibility of infection by an unexpected trespasser. Then it is said—and on this record truly said—that the law does not require the defendant to exercise such extreme care. But we think this argument does not fully meet the whole case which the plaintiff claims to have made. The plaintiff's principal claim was that, in view of the visible and continuous conditions which existed on the watershed, it was the duty of the defendant to have taken some

steps to purify its Crystal Lake water, or at least to have taken steps to find out by more frequent examinations whether it was reasonably fit, at all times, for domestic use.  Whether or not the defendant owed such a duty to the public and to the plaintiff, and, if so, what approved measures should, in the exercise of reasonable care, have been adopted by way of performing it, are questions which should have been left to the jury.

The jury might have found that, under all the circumstances, the exercise of reasonable care would have required the defendant to construct a reservoir sufficient in size and character to give the water a reasonable opportunity to purify itself by sedimentation, or, failing that, to filter the water before distributing it.  Now, it is obvious that purification by sedimentation or filtration would have eliminated infection caused by a casual visitor to the same extent as if caused by a permanent resident; and it follows that if the jury had found that such was the duty of the defendant, the failure to perform that duty might well be regarded as the proximate cause of the plaintiff's illness.

There is error and a new trial is ordered.

In this opinion the other judges concurred.